UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRANKLIN HIGGINS, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | ) Civil No. 07-06-B-W |
| | ) |
| STATE OF MAINE, | ) |
| | ) |
|     Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

    Franklin Higgins, who is serving a 45-year sentence for the 1999 murder of Katherine Poor, has filed a 28 U.S.C. § 2254 petition.  "On Sunday, February 28, 1999, Katherine Poor was found dead on the kitchen floor of her farmhouse apartment.  When Maine State Police Detective Joseph Zamboni arrived at the scene, he surmised that Poor had been sexually assaulted immediately prior to her death. A subsequent autopsy revealed that Poor died as a result of multiple stab and puncture wounds to the neck. State v. Higgins, 2002 ME 50, ¶ 1, 796 A.2d 50, 52.[1]  Higgins identifies six 28 U.S.C § 2254 grounds.  For the reasons that follow, I recommend that the Court deny Higgins § 2254 relief.

*Discussion*

*Applicable 28 U.S.C. § 2254 Standards*

    This Court can review any 28 U.S.C. § 2254 claim by Higgins only if he "has exhausted the remedies available in the courts of the State"; or unless "there is an absence of available State corrective process; or … circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A),(B). "An application for a writ of habeas

---

[1]     The State dropped a sexual assault count.

corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Id § 2254(b)(2). "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." Id. § 2254(b)(3).

With regards to the substance of Higgins's § 2254 challenges, relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim":

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d). See also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006); Smiley v. Maloney, 422 F.3d 17 (1st Cir. 2005); Mello v. DiPaulo, 295 F.3d 137, 142-43 (1st Cir. 2002); Vieux v. Pepe, 184 F.3d 59, 63-64 (1st Cir. 1999). Higgins's ineffective assistance challenges are governed by the § 2254 standards and the well-established Strickland test for ineffective assistance of counsel claims. Strickland v. Washington, 466 U.S. 668, 687 (1984)." Sleeper v. Spencer, 510 F.3d 32, 37 (1st Cir. 2007).

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) and O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)); see also id. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he

relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' "); Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) ("It is, however, clearly inadequate to simply recite the facts underlying a state claim, where those facts might support either a federal or state claim.")(citing Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988)).

The trial court, the Maine Law Court, and the post-conviction court all made factual findings or determinations in Higgins's case. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  If Higgins failed to develop the factual basis of a claim in State court proceedings, he is not entitled to an evidentiary hearing in this Court unless his claim relies on: "**(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence." Id. § 2254(e)(2)(A).  Higgins must also demonstrate that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [Higgins] guilty of the underlying offense."  § 2254(e)(2)(B).

*Higgins's 28 U.S.C. § 2254 Grounds*

**Grounds One and Two – Trial court's denial of the motion to suppress and Higgins's trial attorneys' performance apropos the motion to suppress**

In his first ground Higgins complains that he was not permitted to testify at the motion to suppress hearing so the only testimony taken was that of law enforcement officers.  He maintains that the transcripts of the motion to suppress and the post-conviction evidentiary hearing demonstrate that his confession was elicited after he invoked his right to counsel.

3

The Maine Law Court fully addressed Higgins's pre-trial challenge to his confession.  See Higgins, 2002 ME 50, ¶¶ 11- 18, 796 A.2d at 54 -56.  However that challenge was:

> Whether the Superior Court erred by denying Defendant's motion to Suppress, where the Defendant was removed from his work place, taken to a Maine State Police Command Post, which was unfamiliar to him, where the interrogation was initiated and conducted by two Detectives, where he was given a false reason for going with the detectives, where the detectives had devised a plan for his interrogation, where he was the focus of the investigation, and where he was relentlessly interrogated and accused of lying for four hours and seventeen minutes and where Defendant was never advised of his Miranda warnings.

(Appellant Br. at 1, State App. B.)[2]   There is no question that Higgins did not argue in front of the Maine Law Court that he had invoked his right to counsel prior to his confession, which is

---

[2]     In his 28 U.S.C. § 2254 petition Higgins does state that this determination was an unreasonable application of clearly established law but this is a conclusory, prefatory assertion; the description of this ground is limited to the question of whether or not Higgins invoked his right to an attorney.
   Had Higgins intended to resurrect this same challenge to his confession, he did fully exhaust the claim by presenting it to the Maine Law Court on direct appeal. A review of that discussion reveals that it clearly is not assailable under the § 2254 review standards. The Law Court described extensive facts relevant to the motion to suppress, see Higgins, 2002 ME 50, ¶¶ 2-9, 796 A.2d 50, 52 -53, and these factual determinations would be subject to the § 2254(e) deference.
   As to Higgins's confession the Maine Law Court reasoned:
>   Higgins asserts that the Superior Court erred when it determined that he was not subjected to a custodial interrogation. The State contends that an assessment of the evidence at the suppression hearing in light of the factors listed in State v. Michaud, 1998 ME 251, ¶ 4, 724 A.2d 1222, 1226, demonstrates that the Superior Court did not err when it found that Higgins's "statements were made in a non-custodial setting and did not require administration of the Miranda warnings."
>   We have stated that "[a] person subject to interrogation while in police custody must first be given a Miranda warning, otherwise statements made in the course of the interrogation will not be admissible against that person." State v. Holloway, 2000 ME 172, ¶ 13, 760 A.2d 223, 228. "The United States Supreme Court has defined 'custodial interrogation' as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " Michaud, 1998 ME 251, ¶ 3, 724 A.2d at 1226 (quoting Thompson v. Keohane, 516 U.S. 99, 107, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)). "Therefore, a Miranda warning is necessary only if a defendant is: (1) 'in custody'; and (2) 'subject to interrogation.' " Id. (citing State v. Swett, 1998 ME 76, ¶ 4, 709 A.2d 729, 730). "A defendant is 'in custody' if subject to either: (a) a formal arrest; or (b) a 'restraint on freedom of movement [to] the degree associated with a formal arrest.' " Id. ¶ 4, 724 A.2d at 1226 (quoting Stansbury v. California, 511 U.S. 318, 322 (1994)).
>   In making a custody determination, courts must ascertain whether "a reasonable person standing in the shoes of [the defendant] [would] 'have felt [that] he or she was not at liberty to terminate the interrogation and leave.' " Holloway, 2000 ME 172, ¶ 14, 760 A.2d at 228 (quoting Keohane, 516 U.S. at 112). In Michaud, we stated that when a court is analyzing whether a

4

defendant is in custody, it may examine a number of objective factors, including but not limited to the following:

>  (1) the locale where the defendant made the statements;
>  (2) the party who initiated the contact;
>  (3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);
>  (4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
>  (5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
>  (6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);
>  (7) whether the suspect was questioned in familiar surroundings;
>  (8) the number of law enforcement officers present;
>  (9) the degree of physical restraint placed upon the suspect; and
>  (10) the duration and character of the interrogation.

Michaud, 1998 ME 251, ¶ 4, 724 A.2d at 1226. "These factors are not to be viewed in isolation, but rather in their totality." Holloway, 2000 ME 172, ¶ 19, 760 A.2d at 229. "We will uphold a denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision" and "review any questions of law that arise in the analysis de novo." State v. O'Rourke, 2001 ME 163, ¶ 12, 792 A.2d 262, 265 (citing State v. Thibodeau, 2000 ME 52, ¶ 5, 747 A.2d 596, 598); see also State v. Storey, 1998 ME 161, ¶ 8, 713 A.2d 331, 333 (reviewing historical facts deferentially, "but when the challenge is to the legal conclusion drawn from the historical facts our review is de novo").

Viewing the facts established at the suppression hearing in light of the Michaud factors supports the finding that Higgins was not in custody at the time of the March 10th interrogation. On the morning of March 10th, Higgins agreed to speak with Detectives Preble and Keegan in keeping with his earlier expressed desire to assist the police in their investigation. He drove himself to the fire station where he was led to a wide-open room on the second floor. Only two detectives were in the room with Higgins at any one time.

The detectives informed Higgins that he was not in custody or under arrest and was free to leave. The detectives never restrained Higgins by any means; the door to the room where he was being questioned was left open throughout the interrogation. The form of the interrogation was one of trying to bond with Higgins; the detectives asked questions in a calm, conversational, friendly, and non-confrontational manner; they never raised their voices; they never informed Higgins that he was a suspect; and they offered Higgins something to drink and permitted him to smoke. Higgins never attempted to leave and never indicated that he wished to terminate the discussion. He also never expressed a desire to speak to an attorney. At one point, Higgins indicated that he was trying to help the detectives in their investigation.

As the interview progressed, the detectives sought to clarify Higgins's prior statements and to reconcile those statements with entries in Poor's diary. After Higgins placed himself at Poor's apartment on the night of her death, the scope of the questions narrowed and Higgins's actions became the focus of the questioning. This fact alone, however, is not enough to convert a non-custodial setting into a custodial one requiring Miranda warnings. See, e.g., Stansbury, 511 U.S. at 323. ("Although the 'focus' of an investigation may indeed have been on Beckwith at the time of the interview ... he hardly found himself in the custodial situation described by the Miranda Court as the basis for its holding." (quoting Beckwith v. United States, 425 U.S. 341, 347 (1976))); California v. Beheler, 463 U.S. 1121, 1124 n. 2 (1983) (noting that the Supreme Court previously "rejected the notion that the 'in custody' requirement was satisfied merely because the police interviewed a person who was the 'focus' of a criminal investigation").

the key factual predicate of his current challenge and would have involved an entirely separate legal analysis by the Maine Law Court, see, e.g., Edwards v. Arizona, 451 U.S. 477 (1981), than that triggered by his forced custodial interrogation claim.

In his second 28 U.S.C. § 2254 ground Higgins faults his trial and appellate attorneys for not effectively challenging the motion to suppress determination.   In his second amended petition for post-conviction review, Higgins did assert:  "The attorney knew that Mr. Higgins had requested the assistance of an attorney prior to being questioned by, and making the tape recorded statement to, the State Police, and his attorneys should have established that during the suppression hearing." (Sec. Am. Post-Conviction Pet. at 2, State App. C.)

As to this claim, the post-conviction court concluded:

Both trial counsel testified that the Petitioner never claimed that he requested counsel before the police interview.  Such a comment would have prompted an appropriate motion[] as a routine matter.  It remains inconceivable that both experienced attorneys would have ignored such a "red flag" event.  Again, this issue of credibility is resolved against the Petitioner.

---

Contrary to Higgins's assertions, the circumstances of this interrogation are substantially different from those presented in Holloway. In Holloway, we determined that the circumstances gave rise to a custodial setting "if not from the outset of the detectives' questioning, certainly when Holloway asked and was denied an opportunity to end the interrogation so that he could contact a lawyer." 2000 ME 172, ¶ 20, 760 A.2d at 230. Unlike the facts of this case, the police in Holloway never informed Holloway that he was free to leave; the interrogation took place in confined quarters; the questions posed by the police were confrontational and accusatorial; Holloway was informed that he was a prime suspect; he was accused of lying and committing the murder; the police prevented him from leaving; the police continued to interrogate Holloway despite his repeated requests that they leave; and the police rejected Holloway's request that the interrogation end so that he could contact an attorney. Id. ¶¶ 4-9, 21, 760 A.2d at 225-27, 230.

In marked contrast to the custodial interrogation in Holloway, Higgins's demeanor and conduct throughout his interrogation manifested a desire to cooperate and answer the detectives' questions. Viewed objectively, the detectives' conversational and non-confrontational response would have caused someone in Higgins's position to conclude that, as stated at the outset of the meeting, he remained free to discontinue the interrogation and leave if he so chose. In sum, the totality of the circumstances surrounding the March 10 interrogation supports the finding that Higgins was not "in custody" when he made the incriminating statements. Therefore, the Superior Court did not err in denying Higgins's motion to suppress.

Higgins, 2002 ME 50, ¶¶ 11- 18, 796 A.2d at 54 -56 (footnote omitted).

(Post-conviction Order at 2, State App. C.)

With regards to this court's review of the post-conviction court factual findings, they are reviewed through the lens of 28 U.S.C. § 2254(d)(2) and (e). Accordingly, I must "presume that the state court's findings of fact are correct. For this purpose, the term 'facts' refers to 'basic, primary, or historical facts,' such as witness credibility and recitals of external events." Sleeper, 510 F.3d at 38 (citing Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir.2001), quoting Bryson v. Ward, 187 F.3d 1193, 1211 (10th Cir.1999)). As Norton v. Spencer stressed: "A 'determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" 351 F.3d 1, 6 (1st Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). I have reviewed the transcripts of the suppression hearing and the post-conviction evidentiary hearing. I can find no basis under this deferential standard to upset the post-conviction court's credibility determination that Higgins never informed his trial attorneys that he had invoked his right to counsel.

### Ground Four – Absence of a provision in the state post-conviction statute for filing a second or successive collateral challenge

The fourth challenge Higgins articulates is that the Maine post-conviction review scheme has no provision that allows for a second or successive collateral challenge to a conviction, unlike the federal statutes. As part of this ground Higgins adds that there was also a serious miscalculation of the statute of limitations vis-à-vis the second post-conviction proceeding. Higgins believes that the statute of limitations should have been tolled while his first post-conviction petition was pending.

I am skeptical that this argument even amounts to a constitutional claim. The United States Supreme Court has observed:

> Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. See Fay v. Noia, 372 U.S. 391, 423-24 (1963). It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, cf. United States v. MacCollom, 426 U.S. 317, 323 (1976) (plurality opinion)[.]

Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987).  Higgins is also mistaken that Maine has no avenue similar to the federal scheme for presenting claims that meet certain criteria like those that can be brought in the federal forum in second and successive petitions.  Compare 15 M.R.S. § 2128(5) with § 28 U.S.C. § 2244(b); id. 2255(h).  The fact that the Maine statutory system does not use the "second and successive" label is of no moment.   To the extent that Higgins intended this ground as a way of excusing his want of exhaustion of any of his claims, Maine has a facially valid "State corrective process" and there were no circumstances that rendered this process ineffective to protect Higgins's rights.  28 U.S.C. § 2254(b). [3]  And, as the State points out, even if there was a miscalculation of the statute of limitations vis-à-vis Higgins's second post-conviction petition, that is not a claim of constitutional magnitude.

### Grounds Three, Five, and Six- Legality of the sentence and the reasonableness of first post-conviction petition disposition

Three of Higgins's 28 U.S.C. § 2254 grounds – his third, fifth, and sixth – overlap either in the sense that they turn on the post-conviction court's ineffective assistance of counsel claims and/or they involve Higgins's assertions that he was illegally sentenced because the court made certain factual findings that should have been the province of the jury under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296, 303 (2004).  The third ground pressed by Higgins is that the trial court lacked the authority to impose the sentence it did

---

[3]     An Apprendi challenge was the only merits argument in Higgins's memorandum seeking a certificate of probable cause on the denial of his second post-conviction petition.  (Mem. Certificate Probable Cause, State App. F.)

because in reaching its sentence it made additional findings of fact regarding premeditation, torture, and extreme brutality and considered uncounseled prior convictions and victim impact statements. In Higgins's sixth § 2254 ground he argues that the Maine State Legislature lacked the authority to enact the Maine murder statute as it authorizes a sentence of up to life but no less than 25-years, requiring the court to make findings of fact to justify a life sentence.

Finally, in Higgins's fifth ground, he maintains that the state post-conviction court's denial of his first petition for post-conviction relief was unreasonable. He indicates that he wants to break his attorney-client privilege and submits several letters by Higgins to his attorneys, suggesting tactics and complaining about an unwillingness on their part to pursue certain arguments. Higgins's reply memorandum focuses singularly on these letters. (Reply. Mem. at 1-2, Doc. No. 22.)

Higgins did not raise his Apprendi challenge in his direct appeal to the Maine Law Court. He briefed only two issues – the challenge to the denial of the suppression order examined above, and the question of whether there was probable cause for the issuance of the search warrant. (Appellant Br., State App. B.)   Higgins did raise a claim relying on Apprendi and Blakely as an ineffective assistance claim in his second amended state post-conviction petition. (Sec. Am. Post-Conviction Pet. at 3, State App. C.)   In the second amended state post-conviction petition Higgins framed his sentencing transcript and Apprendi/Blakely ineffective assistance claim as follows:

> Counsel did not provide Mr. Higgins with access to his sentencing transcript prior to filing the sentence appeal.  Mr. Higgins, if he had been provided with a transcript of the sentencing, would have been able to challenge the court's consideration of any factor which was not found beyond a reasonable doubt by the jury.  The sentencing court considered several factors to enhance the sentence, for example, the fact that the death involved premeditation, torture, rage and a painful death.  Because these facts were not found by the jury, following the

9

>logic of Apprendi … (and now Blakely…) consideration of factors that enhance a sentence deprives an individual of his right to a jury trial if those factors are not found by a jury. Mr. Higgins has the time and the motivation to research the law with regard to this case, and if given a transcript of the sentencing prior to his sentencing appeal, he would have been able to assist in the preparation for that appeal.

(Sec. Am. Post-Conviction Pet. at 3, State App. C.)

The post-conviction court prefaced its discussion of Higgins's multiple ineffective assistance claims by citing the Sixth Amendment of the Constitution of the United States, Article I, 6 of the Maine Constitution, Strickland v. Washington, 466 U.S. 668 (1984) and Brewer v. State, 699 A.2d 1139 (Me. 1997). (Post-conviction Order at 1, State App. C.) The court ruled:

>Petitioner claims that counsel did not provide him with discovery prior to the suppression hearing. The attorneys testified otherwise. After considering the evidence at the hearing and evaluating the credibility of the accounts given by witnesses, the court must resolve the issue against Petitioner.
>The issues of the Kristi Clark statement and juror Riley were fully addressed at trial and do not merit further comment here.
>The court is satisfied that trial counsel advised the Petitioner not to talk about the offense to any person other than them. Unfortunately, he did not heed this advice and the statements he subsequently made corroborated his confession.
>The court is similarly satisfied that trial counsel reviewed the defense position with the Petitioner and that a self-defense position was not discussed or considered. Frankly, given the lurid circumstances of the murder and the post-mortem mistreatment of the victim's body, a claim of self-defense would stretch the limits of reason. Clearly the result of the trial would not be different if this ill-advised approach was taken.
>The court is satisfied that a Franks[4] hearing was neither called for by the circumstances (there was sufficient probable cause without the subject material) [and such an argument was] not likely [to meet with] any degree of success.
>…
>The court is satisfied that all witnesses which Petitioner asked to be called as witnesses were fully evaluated and called by counsel as appropriate. Again, the court resolves the credibility issue of what the Petitioner claims he said regarding witnesses against the Petitioner.
>The issue of the taped statement is resolved on direct appeal.

---

[4] Franks v. Delaware, 438 U.S. 154 (1978).

10

> The failure to obtain or share the sentencing transcript prior to appeal does not invoke any constitutionally based right. The court finds no obvious error – there was no Apprendi factor present in this case.
> In brief, the court finds no basis for granting post conviction relief. In each instance, whether the credibility issue is resolved against Petitioner or there is no substantive ground for relief. Further, the Petitioner has not demonstrated in any instance that the outcome of the trial would have been different if things had proceeded as he suggests.

(Id. at 1-2.) This order is dated September 22, 2005.

On April 18, 2006, the Maine Law Court denied Higgins's request for a certificate of probable cause without discussing the merits of Higgins's challenge to the post-conviction court's determination. (Apr. 18, 2006, Order at 1, State App. D.) Accordingly, the post-conviction court's order is the last reasoned decision and the focus of this court's 28 U.S.C. § 2254 review. See Ylst v. Nunnemaker, 501 U.S. 797, 800-06 (1991).

With respect to the exhaustion of his claims through to the discretionary review of the Maine Law Court, Higgins argued in his petition for a certificate of probable cause that under 17-A M.R.S. § 9-A a prior conviction used to enhance a sentence must be alleged in the charging instrument, making a bill of attainder argument. He also argued that the Maine murder statute, 17-A M.R.S. § 201, and the sentencing statute, 17-A M.R.S. § 1251 are unconstitutional as they allow a judge to find facts as to aggravating factors in contravention of Apprendi, Blakely, and State v. Schofield, 2005 ME 82, 895 A.2d 927.[5] In this memorandum Higgins also eludes to the court's denial of the sentencing transcript.[6]

Higgins did not present the Maine Law Court with his claims that his two trial attorneys were ineffective. Although I do address the Apprendi/Blakely issue below, the various other

---

[5] He further asserted that the fact that the same judge presided over his trial and his state post-conviction proceeding denied him due process. See cf. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

[6] Higgins further complained about post-conviction counsel and lodged facial challenges to the Maine sentence appeal process, the Maine direct appeal process, and the Maine post-conviction review process.

11

ineffective assistance claims addressed by the post-conviction court and reasserted here are non-exhausted. See Baldwin, 541 U.S. at 29 ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.") It is also worth noting that the submission of the letters written by Higgins to his attorney complaining of their strategy and the quality of their efforts on his behalf is the type of factual presentation that a 28 U.S.C. § 2254 petitioner cannot wait to make in the federal forum. See 18 U.S.C. § 2254(e).[7] What is more, even if Higgins had properly exhausted these Sixth Amendment claims, the post-conviction court's factual findings and application of the Strickland principles would survive the § 2254(d) and (e) review standards.

As for Higgins's contention that the statutes under which he was convicted and sentenced are vulnerable to an Apprendi/Blakeley challenge, the post-conviction court was correct in its analysis that there was no basis for such an argument. "A person is guilty of murder" under 17-A M.R.S. 201 "if the person: **A.** Intentionally or knowingly causes the death of another human being; **B.** Engages in conduct that manifests a depraved indifference to the value of human life and that in fact causes the death of another human being; or **C.** Intentionally or knowingly causes another human being to commit suicide by the use of force, duress or deception." 17-A M.R.S. § 201(1). The penalty provision referred to in this statute, id. § 201(2), is 17-A M.R.S. § 1251, which provides as relevant to Higgins's crime: "A person convicted of the crime of murder shall

---

[7] Apparently Higgins misfiled the copies of the letters and did not rediscover them until July 3, 2005. (See Doc. No. 22-4.) The post-conviction evidentiary hearing was held on June 6, 2005. Higgins commenced efforts to get the Maine Law Court to review the post-conviction determination on October 12, 2005. In his memorandum he faults post-conviction counsel for not presenting the evidence of these six letters. I am skeptical that Higgins's misfiling of these letters would mean that the letters "could not have been previously discovered through the exercise of due diligence." Id. § 2254(e)(2)(A). But even if I am wrong on this score, the contents of the letters would certainly not be "sufficient to establish by clear and convincing evidence that but for" trial counsels' noncompliance with Higgins's requests in these missives, "no reasonable factfinder would have found the applicant guilty of the underlying offense." § 2254(e)(2)(B).

be sentenced to imprisonment for life or for any term of years that is not less than 25. The sentence of the court shall specify the length of the sentence to be served and shall commit the person to the Department of Corrections. 17-A M.R.S. § 1251. There is no constitutional infirmity in this sentencing scheme. See Cunningham v. California, 549 U.S. 270, 273 (2007) ("Other States have chosen to permit judges genuinely to 'exercise broad discretion … within a statutory range,' which 'everyone agrees' encounters no Sixth Amendment shoal.")(quoting United States v. Booker, 543 U.S. 220, 233 (2005))(footnote omitted); Apprendi, 530 U.S. at 481 ("We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case."). Higgins received a forty-five-year term, not life. The jury's murder verdict alone is a sufficient basis for that sentence. See Libby v. State, 2007 ME 80, 926 A.2d 724, 724 -28; compare Cunningham, 549 U.S. at 280-81, 293; Blakely, 542 U.S. at 299-300, 303-04; Apprendi, 530 U.S. at 468-69, 490; Schofield, 2005 ME 82, ¶¶ 13 -21, 895 A.2d at 931-33.

### *Conclusion*

For the reasons above I recommend that the Court deny Higgins's 28 U.S.C. § 2254 relief. I further recommend that a certificate of appealability should not issue in the event Higgins files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 9, 2008

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge